Thank you. Very well. Okay. Mr. Wood, please proceed. Thank you, Your Honor. May it please the Court, the Council, I'm Jason Wood. I represent the appellant in this matter, Art Baker, Arthur Baker. This is a case about a small town, Sheriff's Department, run amok, taking the side of a man against one they perceived to be an outsider, a client 70 years old at the time. He was estimated probably to weigh about 150 pounds or so, small man, slight, and if the Court had a chance to review the recordings, quite mild-mannered, at least in my opinion,  The events occurred that we're talking about were July 30th of 2018. There had been a longstanding civil property dispute going on between Mr. Baker and his next-door neighbor. When we say neighbors, these are huge lots. I think he owned roughly 50 acres or so, I can't remember. Ms. Nelson, the neighbor in question, owned a fair amount more up in the mountains near Orofino, Idaho. There had been an ongoing property dispute between these two people, Ms. Nelson and Mr. Baker, for over a year. And it was well-known to the defendant appellant, Deputy Barlow, as well as the sheriff, Sheriff Gatz. And events culminated on the day of July 30th of 2018 when there was a call of a dispute. And this dispute had culminated finally where Mr. Baker finally decided, you know what, I own this easement, I own the ground, I have granted a license to Ms. Nelson, and she's abused that through several ways that we've identified in the record, accusing him of trying to poison her to death, et cetera. Counsel, let me ask you this. We have read the record. We've read your brief. What exactly is the speech that you claim Deputy Barlow retaliated against? There were several examples, and I think we've cited them at length in footnotes, et cetera. But essentially, it was his being verbal, vocal, and in the characterization of Deputy Barlow of being loud, just essentially using his words to protest, that he was protesting that it was his property. She said she didn't care if it was his property. Let me just stop you a little bit. The context, of course, is, I mean, this is, I'm from Pendleton. We have rodeos. We have cowboys. We have all that stuff. I get all of that. But I, this is a constitutional claim you're making, and saying that somebody's loud and so on doesn't exactly rise to a constitutional level. What exactly are you saying that Deputy Barlow said? What words are you claiming she used that are, in other words, what did she retaliate against? What did your client say that she retaliated against, specifically? Oh, that, follow me. That's terrible, isn't it? How could somebody say such a thing? But if he hadn't said it, it wouldn't have occurred. I mean, that's the point, is he was protesting. He was asserting his property right and his ability to exclude these people. The content of the speech essentially doesn't matter. The case law from the Ninth Circuit is clear that a contempt of cop is, you know, arresting someone in a situation in which they would not otherwise arrest them for their speech. What I'm struggling with, you have an unusually broad Idaho law here, really broad. I mean, it's, I've never seen one broader. So you've got a deputy that's apparently familiar with this law, did what arguably she thought was appropriate. Your client was understandably upset, and what happened happened. But again, you're asking us as a federal appellate court to basically find that either the Constitution was violated or that the state law was violated. And it's hard for me to get beyond that. This is, you remember from law school, the concept of de minimis non curat lex, you remember that concept? The law does not bother with trifles. And I, I'm troubled by this case. I wonder how in the heck this case is before the Ninth Circuit. Well, I wonder that too. I mean, this case should, I shouldn't have to be here. I mean, there was a clear violation, at the very least, of lack of a probable cause. There's the, but given the, given the breadth of the statute, given the fact that the deputy borrowed, she's not a lawyer, but she understood there's a very broad statute here. Why couldn't she reasonably have concluded that she had probable cause? Well, you know, I've given, I think in the briefing, a couple of examples. If, if an unintentional, now, this is for the sake of argument, in the factual context of this case, there's no evidence that my client actually inhibited or prevented Ms. Nelson from moving. All he did was prevent her from moving forward. Okay. Someone else's wife prevented him from moving forward. That shows, and my understanding is it's undisputed, that when the officer arrived on the scene, your client was blocked in, both in front and behind, and under the probable cause standard, we're not talking about ultimate proof of guilt, but under the probable cause standard, why was that not a restriction on, of another person's liberty? Well, because he can't drive two cars at once. He was responsible for his car in the front. Okay. He's not responsible for the actions of his wife. But he asked her to come there. Excuse me? He asked her to come there, did he not? Yes, he asked her. And she parked directly in back. So again, you know, in an ideal world, that kind of thing would never happen, but why wasn't it reasonable, at least to the level of finding probable cause, for Deputy Barlow to say, you know, this is of a piece here. You've got two people, a husband and a wife, and he's blocked in. Well, the officer had a perfect right to be there to try to settle, settle people down, prevent a disturbance of peace. What she didn't have the right to do was arrest somebody for a crime in a civil dispute that she admitted on the record. Except for the statute. This is a very broad, wildly broad statute. That's true. In fact, so obviously broad that it couldn't be enforced as written, and the officers knew this. They were aware that there was, that the only way that you can establish or arrest someone for a false imprisonment is if there is an intent to confine. And that's what's lacking here, is any evidence of intent to confine. In fact, the undisputed evidence all establishes the absolute contrary, which is my client, and even if it was relevant what his wife wanted, what her intent was, even if that's relevant, it's undisputed that both of them repeatedly expressed their intent that Ms. of false imprisonment is that they were preventing her from leaving. They were saying, no, we want her to leave. Just let her go on her own road. Not on our road. But again, again, I know these are unusual facts. My understanding is Deputy Barlow was a friend of the other, of Nelson, had ridden on that person's property, had gone over what is now reported to be a license as opposed to a regular easement. But, based upon her own riding experience, that Nelson actually owned some sort of right. Now, perhaps wrong. But she had that idea. And the record seems to show that your client had asked his wife to show up. She parked behind Nelson. Why couldn't the deputy say, you know, he's locked in here? It's intentional. Husband and wife. He asked her to come. She blocks the car. Why isn't that enough under the statute to make the, again, conviction, no, but to probable cause, why not? For several reasons. Number one, it's undisputed that Deputy Barlow at the scene, before she made the arrest, knew the reason that Mrs. Baker showed up. It wasn't nefarious.  She knew the reason was not to block in Ms. Nelson. How did she know that? Because in her own written report, she said, and we've cited it to the court in the record, that she says in her own statement that Mrs. Baker told me that she came because Arthur, her husband, had called and said, I'm being ganged up on here by Nelson's friends. Would you please come and be a witness for me? Okay. Their concern was that the Sheriff's Department was assisting Nelson in Nelson's attempt to create a prescriptive easement that Mr. Baker did not want to grant. And so the reasons weren't nefarious, number one, and Barlow knew it. It's in her report, before the arrest was ever made. And number- Even if, did he have to, in order to establish probable cause, did she have to find that there was an intent to block Nelson, or just that the car was there and he was blocked? Yes. I think our position is that there has to be, there has to be some evidence of criminal intent there. Otherwise, like the examples that we've given, anybody in a- What's your case that says under Idaho law, there has to be mens rea to have probable cause for this particular violation? The Griffith case. Okay. It's a 1930-something case, goes way back. It's what the Idaho jury instruction is based upon. But even if there is a mens rea requirement for conviction, right? What you have is a statement by someone at a scene saying, this is the reason why I'm here. Is the officer required to resolve the fact, a factual question of intent? I mean, it's one thing to report what a witness says, and it's another thing to make a finding about what the actual intent was, which I think when an officer arrives on a scene and they're taking witness statements, they're not necessarily resolving specific intent issues. They're going to make, they have to make, and we're judging on an objective standard, you know, was there sufficient evidence that, you know, the husband and wife had blocked in this individual, and that when the officer asked, you know, to turn her back, a gate was locked. You know, I mean, I think there's, objectively speaking, you know, there could be a dispute if this went to trial about whether the intent requirement was met, but when we're talking about probable cause to arrest at the scene, do you have any case law saying that the fact that someone disclaims specific intent negates probable cause? Well, we decided that we, I think the biggest problem here is the perception that all she needed was probable cause, the deputy at the time she arrived. The case law in the Ninth Circuit is clear. The determination of probable cause is all the facts available to the officer at the time she makes the arrest, okay? Now, was there probable cause at the time that Barlow arrived at the scene? I don't think so. Maybe, maybe not. I don't believe she did because just like if there's a traffic jam, you can't conclude that somebody's, you know, trying to confine somebody else or that, you know, you're in line at McDonald's in the drive-through. There's no evidence that anybody's trying to prevent anybody else from moving. There needs probably to be some kind of investigation to determine if there is a crime here and that's the question. How can you conclude? But not to find probable cause. I mean, obviously, to convict, that's a whole different deal. But probable cause is a very different standard, is it not? I mean, you've got an officer on the scene doing, in this case, based on what she saw, what she understood, she thought she had probable cause. Again, I'm struggling with this. I mean, it's too bad we're having to talk about this. It's a sad, sad situation. But I'm struggling to find that she didn't have probable cause under this vastly expanded statute given the circumstances. Convince me I'm wrong. What am I missing? The case law, the case laws I've indicated for almost 100 years now has been clear in Idaho. I've never heard that about Idaho case law. Yeah. Yeah. The case law is, there's a dearth of a lot of case law, but what there is goes way back. And it's clear, you said. Yeah. 1930s. It goes way back. And the case law is clear. The officers knew about it and they're expected to know about that case law. Otherwise, there wouldn't be qualified immunity standard. And the other fact is we have to go back to the question of not what she had when she arrived. What did she have when she arrested? She did a full investigation and she found out that there was no probable cause. That neither of the bakers were trying to confine her, that they wanted her to leave. They wanted her to leave on her own road and that that road was passable, that she could drive it, that Barlow knew that she could drive it. Nelson admitted to her that she could drive it, she just didn't want to because it was not convenient. Well, counsel, I want to take you in a little bit of a different direction. So our case law says that you're not going to have a false arrest claim so long as there is probable cause for any offense. And the other offense at issue here was obstructing or resisting an officer. So this deputy gave a clear directive to move and let this person pass. Why didn't she have probable cause for that offense? And if she did, doesn't the false arrest claim fail? The answer to the second is no. And the answer to the first is because it was an unlawful order. If there is an unlawful order, the case law both in Idaho and in the Ninth Circuit is an unlawful order. The court need not be obeyed as long as the disobedience is peaceful. Why doesn't your argument on that point necessarily mean that the officer had an obligation in that moment to resolve a civil dispute? Is that your position, that this deputy in that moment had to resolve ultimately what the property rights were? No. No, she had an obligation to inquire, at least in terms of whether or not the... Because there was no dispute on the scene. Nelson admitted that she had a way of egress. She admitted it, and yet... The record shows that Nelson was claiming that she could not pass that road in her car. So the officer would have had to resolve that factual dispute. The officer... Why wasn't it reasonable for the officer just to say, ask Baker to open the gate and leave that civil dispute, as the officer repeatedly said, leave that civil dispute for resolution by the courts, not her? Well, he resolved that dispute himself. He already did. So at that point, she resolved that dispute, Deputy Barlow, by deciding, you know what? I don't believe him. I don't think you can... I don't think she can drive out her own way. I'm going to force him to open the gate and to surrender his private property rights, okay? He didn't... She didn't have the right to make him surrender his private property rights. Okay, you've gone over your time. Let me ask my colleagues, does either have additional questions? Very well. Let's hear from counsel for the, I guess it's for the county. Please proceed, sir. If it may please the court, my name is Andrew Pluskill. I represent Clearwater County, Amanda Barlow, Sheriff Goetz, the City of Orofino, and Deputy Russell. I would just like to follow up on a couple of points that Mr. Wood made, just right off the bat. Most prominently, Mr. Wood asserted that the case law on what is and what is not required for the crime of false imprisonment in Idaho goes back a century. And to that, I would respond only by pointing out that in our brief, we cited that as recently as 2013, the Idaho Supreme Court stated that false imprisonment, and I quote, requires only one, unlawful, and two, violation of another's personal liberty. That's State v. Joy, 304, Third Pacific Reporter, 276. Again, it's in 2013. And I would also point out that to follow up on the going back a century point, I believe we also cited in our brief another case from the Idaho Supreme Court from 1918 that, and I quote, anybody who aids or assists in procuring false imprisonment is equally liable with one who actually places the person falsely imprisoned under restraint. That's Harkness v. Hyde, 176, First Pacific Reporter, 885, Idaho, 1918. I mean, to the extent that Mr. Wood is asserting that Idaho law goes back a century and is unclear, he's right. But Idaho law on this point is not exactly completely consistent with his assertion that you need to show specific intent that you intend to confine somebody to commit the very best, ambiguous, in case law dating back a century in Idaho. I would also like to point out that to the extent that Mr. Baker was worried that Amanda Barlow, Deputy Barlow, letting Ms. Nelson leave on that date might give Ms. Nelson a prescriptive easement claim, the law in Idaho is the prescriptive easement is essentially a claim of adverse possession. And the time limit for adverse possession in Idaho is 20 years of continuous hostile use. I don't think that Ms. Barlow letting Ms. Nelson leave would qualify as hostile use to begin with. But even if it did, 20 more years had to go by before an adverse possession claim and  Council, it seems to me that the key issue on whether there was probable cause for I'm getting this false imprisonment is whether the deputy did a sufficient investigation. So she shows up. She sees this car blocked in on both ends by a car, other cars. Everybody's upset. She has some prior knowledge. It does seem that she talked to everybody. She already had her mind made up. She knew what this story was. She was friends with one side of this story. Why was that sufficient? And I think that under this circuit's case law, it's a reasonable investigation. It doesn't have to be an exhaustive investigation. Is it reasonable to show up and just not accept one side of the story? Well, I think that that's not necessarily what happened. Ms. Barlow showed up. She questioned, as you rightly point out, everybody present, asked to get everybody's side of the story, investigated, could see that Diane Nelson was blocked in on both sides by vehicles that it's undisputed were owned by Mr. and Mrs. Baker. And she investigated the notice that Mr. Baker claimed to have posted. And she questioned Diane Nelson, who claimed that she was unable to leave, even if she could at some point have used the cutoff road. And under Idaho law, as Judge Smith pointed out previously, it's a very broadly worded statute. The elements of false imprisonment required that she, the complaining witness, not be able to or be restricted in her movements. And she almost indisputably was. And is there anything in the record to show that she ever asked Mrs. Baker to move so that she could back up and go back to her house or go back or exit the other way? I believe there is. I believe that Ms. Baker moved her vehicle once Deputy Barlow asked her to. I believe that is specifically. My question is whether, sorry, that there's so many names in this case and they get. A lot of them start with B. Nelson, whether Nelson ever asked Mrs. Baker to move so that Nelson could go either go back to her home to avoid this problem or that she could go out the other way. I didn't see anything in the record to indicate that Nelson asked for that. All I see is that Nelson insists going out the way she wants and will accept nothing less. I think that. I'm not aware of any statement or evidence in the record that indicates that Nelson specifically asked Mrs. Baker to move. I do not know if it's in there. I do not know if it's not present. I'm unaware. It's not on the recording. I know that. And as far as Ms. Baker, sorry, Ms. Baker, Ms. Nelson. I'm not aware of any testimony that she gave during her deposition that stated I specifically asked Ms. Nelson, I'm getting the names wrong as well, Ms. Nelson asking Ms. Baker to move her vehicle. On the retaliatory arrest issue, I'm struggling with why that's not a jury question. As my colleague has pointed out, it's clear that the Deputy Baker knew Nelson's had ridden with them, knew their property, knew their position with respect to the license and the like. When she arrived, at least by my record, it looked like third party neighbors, Perry and Gray, were also there blocking Baker. She didn't do anything to them. Why isn't that a jury question, that point on the retaliatory arrest? Well, just to clarify, Mr. Perry's vehicle, I don't believe was at least not fully blocking anybody in. But as far as the retaliatory arrest question goes, I think that under Ninth Circuit case law and under the Supreme Court's decision in Neves versus Bartlett, probable cause and the existence of probable cause is ordinarily a defense. In this case, it bars a retaliatory arrest claim under the First Amendment. Mr. Baker brought a First Amendment retaliation claim and that, as I understand it, is what you're asking about. And case law states that a finding of probable cause will ordinarily bar a claim for First Amendment retaliation. And I know that there is an exception to First Amendment, that particular probable cause bar announced in Neves, the reason. But Ballantyne seems to collapse the Neves or Neves, however you say it, merits inquiry, doesn't it? I mean, again, it just seems to me this is it's a material factual dispute about whether there was a retaliatory arrest. And regular people could look at this and say, well, look at all that they knew. You got all these neighbors and so on. She didn't do anything to them. She was upset with the one side. Why isn't that a jury question? Well, to the extent that the neighbors were present, they weren't the ones who were trying to keep Miss Nelson in place. It's basically, I think it's difficult to dispute that Nelson was initially at least held in place, told you're not leaving by this gate by Mr. Baker. And that kicked off everybody else. The other neighbors, they were passerby. They came by, they stopped and they watched this whole scenario play out. And as far as let's just say arguendo that they also blocked in this situation, what role, if any, would that play in our analysis? Well, if and the sheriff did nothing to them, did nothing, didn't tell the move, didn't do anything. Sorry if I spoke up for you, Judge. No, no, that's fine. What is it with judges named Smith asking really good questions? Anyways, I think that that would at least, the scenario you outlined, would get you closer to the exception that's set forth in Neves. Neves is looking for objective evidence that this is a common offense that only this person got cited for. I mean, you can have probable cause for everybody, but if only one person is getting cited for it and arrested for it, that is what Neves, I think, is talking about. And the exception that the Chief Justice is talking about there. And I just don't think there's any objective evidence here, which is, again, what Neves is asking for, objective evidence that this is a common offense. This is something that happens all the time in Clearwater County. And Amanda Barlow, Deputy Barlow, zeroed in on this one person who was committing this common endemic offense and said, you know, I screw you. I'm going to cite you for this and I'm going to arrest you for this. She said that Mrs. Baker was, in quotes, as I recall, running her mouth, in quotes. I know that's pretty serious in that county, but that's not a big deal, is it? Well, arresting people for running their mouths? God help us in Portland. And I don't think that you can fairly look at the record and say that that's the only thing she arrested him for. She arrested him because she confronted objectively verifiable evidence. It's the photograph reproduced in Mr. Baker's own brief, showing that Mr. Baker and or Mrs. Baker had committed acts that prevented Diane Nelson from leaving. And Barlow, according to the record, if I understand it, Barlow threatened to arrest Mrs. Baker for, in quotes, running her mouth, in quotes. I'm sorry, I misunderstood what you're referring to. Yeah, yeah. That's a pretty serious offense, I know, but doesn't that show the tenor of what we're dealing with here? You got a deputy, again, tough situation, but she knows the other person. One can make an argument that she believed them, sided with them, and therefore was annoyed by the position that the Bakers took and took her, if you will, revenge by arresting them. I'm not saying that's what happened. I'm just saying, you know, why wouldn't that be a question that would go to the jury? I don't think that's a question that goes to the jury for the reasons I stated previously. I don't think you get past the Neves or Nieves, I'm not sure how to pronounce it either. Nieves means snows, and I think there's a lot of snow in this case. There is quite a bit of snow around my house. Floating down. But, yeah, I don't think that, I think that if probable cause existed to arrest Mr. Baker, I don't think that there is objectively verifiable evidence of the sort that is described in Nieves to find that. If the sheriff had arrested Mrs. Baker for, in quotes, running her mouth, would that have been reasonable and objective? I mean, I think that would certainly be a closer call. I think that the case against Mrs. Mr. Baker, I think that probable cause or any crime that Mrs. Baker might have committed, that's a pretty, that'd be a pretty slender read. She was called down there by her husband and that's indisputable. That's in the record. That's what Mr. Baker and Mrs. Baker both told Deputy Barlow. And I think it's, you can hear that on the audio recording. I think that to find probable cause for Mrs. Baker, having committed the crime of false imprisonment or resisting or that's a much harder case, but she's not on trial here. She was not charged. She was not cited. Deputy Barlow was frustrated. I think that's very obvious and very easy to tell just by listening to the audio. I don't think that's disputable. I think that she might have made a poor choice of words there, but she didn't retaliate against Mrs. Baker. And- Did she retaliate against Mr. Baker? I don't think so. I mean, I think she had probable cause. And I think that under the United States Supreme Court case law that controls here, that probable cause is enough to resolve a retaliation claim in her favor. Counsel, if I understand you correctly, you're saying that the Supreme Court case law that you've cited says that we test for probable cause under an objective standard. And therefore, whatever evidence of a subjective intent to retaliate by is not something we would consider because if there is objective evidence of probable cause. And then to overcome that, we would have to have evidence essentially of disparate treatment where there is similar conduct is not subject to arrest. And it's only in this case where there was an arrest. So do we have any other case law saying that even when there is evidence of as long as the objective standard for probable cause is met in the absence of other evidence under Nieves, there is no claim? To the extent that I understand the question, I think that you have succinctly stated the holding from Nieves, as I understand it, at least. And if I'm wrong, I'm sure I'll be corrected by two or more judges. That's the implication of Nieves, your suggestion. That is my understanding of the holding as it applies to this case in Nieves, yes. What's your understanding of the effect of our Ballantyne case on the Nieves exception? I mean, I think that Ballantyne applies Nieves. And I think that to the extent that... In what way? I mean, it applies it. I would have to... I'm not entirely sure I follow the question. My understanding of Ballantyne, at least, is that it applies Nieves and that it applied it to street walk chalking or some people writing on sidewalks with chalk. And some were, an individual was cited and others weren't. I mean, I think that is as clear an indication that you are going to find of, look, there's chalk on the sidewalk from many people. Only one person was arrested or cited. I think that is a straightforward application of the exception set forth in Nieves. Okay. You've used your time. Let me ask my colleagues whether either has additional questions. All right. We thank both counsel for your arguments. We appreciate it. This is an unusual case. And we hope we don't have too many of these exciting cases. But we thank you both for your argument. The case you just argued is submitted.
judges: SMITH, FORREST, SUNG